EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellant,

v.

HOME OF ECONOMY, INC., Appellee.

Nos. 82–1819, 83–1216.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1983.

Decided July 20, 1983.

David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Deborah Reik, Michael N. Martinez, Gen. Counsel (Acting), Michael J. Connolly, Gen. Counsel, Washington, D.C., for appellant.

Robert A. Feder, Pancratz, Kruger, Wold, Yuill & Johnson, Fargo, N.D., Garry A. Pearson, Pearson & Christensen, Grand Forks, N.D., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

FAGG, Circuit Judge.

The Equal Employment Opportunity Commission appeals the district court's dismissal without prejudice of its Equal Pay Act suit against Home of Economy, Inc. for failure to attempt conciliation with Home. On appeal, the EEOC argues that it is not required to conciliate as a prerequisite to litigation under the EPA. We agree and reverse the district court.

The Department of Labor began investigating Home, a retail department store business, in 1978 for potential EPA violations. As a result of the passage of the Reorganization Plan No. 1 of 1978, authority for administration and enforcement of the EPA was transferred from the Department of Labor to the EEOC in July 1979. Thus, the Home case was transferred to the EEOC which undertook a new investigation including extensive correspondence and a meeting with Home in North Dakota. Subsequently, the EEOC filed suit in October 1981 seeking injunctive relief, back wages and liquidated damages or prejudgment interest. On December 18, 1981, Home moved to dismiss the suit and, after a hearing, its motion was granted by the district court on July 20, 1982. See EEOC v. Home of Economy, Inc., 539 F.Supp. 507 (D.N.D. 1982).

The basis for the district court's dismissal was its conclusion that the EEOC must conciliate sex discrimination cases filed under the EPA. Id. at 509. Although the court recognized that "[t]he Equal Pay Act contains no express conciliation requirement," it supported its adoption of a mandatory conciliation requirement by analyzing the EEOC's conciliation obligation in Title VII cases and concluding that a similar requirement in EPA cases would fulfill "the legislative intent that the EEOC act as conciliator before it acts as litigator." Id. at 510. The court found further support for its new requirement in the 1979 transfer of EPA enforcement functions. "In view of the purposes of the transfer of functions from the Labor Department to the EEOC, it seems logical that when the EEOC is handling a transferred sex discrimination

complaint, it should adhere to the same regulations it must follow when handling a Title VII sex discrimination complaint." *Id.* at 511.

Contrary to the district court, we hold that, unlike Title VII claims, there is no requirement that the EEOC conciliate EPA claims before filing suit. First, the EPA, a substantive amendment to the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, has no express requirement of conciliation as a precondition to suit. *See* 29 U.S.C. §§ 206(d), 216, 217. There is no uncertainty in the statutory language of the EPA, and courts are not at liberty to create ambiguity and resort to statutory construction where the statutory language is clear and unequivocal. *Ex Parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947–48, 93 L.Ed. 1207 (1949); *Arkansas Valley Industries, Inc. v. Freeman,* 415 F.2d 713, 717 (8th Cir.1969); *Northwest Paper Co. v. Federal Power Commission,* 344 F.2d 47, 50 (8th Cir.1965). "When the statute is unambiguous, judicial inquiry ordinarily is at an end. We ask not what the Congress means; we ask only what the statute means." *United States v. Hepp,* 656 F.2d 350, 353 (8th Cir.1981). Here, the statute means that a conciliation requirement does not exist in EPA cases.

Second, we are convinced there is no congressional inadvertence or oversight. If Congress had wanted a conciliation requirement in EPA cases, it would have expressly required conciliatory action as it did in two other statutes dealing with discrimination, Title VII and the Age Discrimination in Employment Act. *See* 42 U.S.C. § 2000e–5(b) ("shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion"); 29 U.S.C. § 626(b) ("shall attempt to eliminate ... through informal methods of conciliation, conference, and persuasion"). Because Title VII and the ADEA contain a specific conciliation provision, the omission of a like provision in the EPA is significant to show a different intention on the part of Congress. *See International Union of Electrical, Radio & Machine Workers v. Westinghouse Electric Corp.,* 631 F.2d 1094, 1101 (3d Cir.1980),

*cert. denied,* 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981); *General Electric Co. v. Southern Construction Co.,* 383 F.2d 135, 138 n. 4 (5th Cir.1967), *cert. denied,* 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968).

Third, even though an analysis of the legislative history is not required due to the unambiguous language of the statute, the legislative history does, in fact, support our conclusion. The legislative history reveals that Congress considered and rejected a proposed version of the EPA which specifically provided for conciliation. The unenacted bill stated: "If a violation is found to exist, the Secretary may, before taking further action hereunder, by informal methods of conference, conciliation, and persuasion, endeavor to eliminate ...." S. 910, 88th Cong., 1st Sess., 109 Cong.Rec. 2886, 2887 (1963).

Finally, the transfer of EPA enforcement functions from the Department of Labor to the EEOC did not add a conciliation requirement to the process of handling EPA cases. There is nothing in the Reorganization Plan itself, the message of President Carter accompanying the plan, the Executive Order implementing the plan, or the plan's legislative history that implies that EPA claims must be processed by utilizing Title VII conciliation methods. *See* Reorganization Plan No. 1 of 1978, *reprinted in* 1978 U.S.Code Cong. & Ad.News 9795–9800; Exec. Order No. 12,144, *reprinted in* 44 Fed. Reg. 37,193 (1979); S.Rep. No. 750, 95th Cong., 2d Sess. (1978); H.R.Rep. No. 1069, 95th Cong., 2d Sess. (1978). Rather, the plan transferred the existing EPA functions to the EEOC and did not add conciliation procedures as a new requirement. "All policies and authorities involved in this reorganization have already been enacted into law by various statutes and no new policies or authorities are created by this plan." H.R.Rep. No. 1069, *supra,* at 1. Two years after the transfer, the Supreme Court discussed the lack of a conciliation requirement in EPA cases: the EPA, "unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *County of Wash-*

*ington, Oregon v. Gunther,* 452 U.S. 161, 175 n. 14, 101 S.Ct. 2242, 2250–51 n. 14, 68 L.Ed.2d 751 (1981). *Accord Ososky v. Wick,* 704 F.2d 1264 (D.C.Cir.1983).

In conclusion, no requirement to conciliate EPA cases exists, and the district court's holding to the contrary is unwarranted. Because the opinion of the district court is reversed and the complaint is to be reinstated, Home is not the prevailing party and is not entitled to the attorneys' fees awarded in the district court's September 20, 1982 memorandum and order.

Home's motion to dismiss was also premised upon the doctrine of laches. The district court's decision was not based on laches and it specifically declined to address that issue. Home argues this theory on appeal as an alternate ground for affirmance. However, we will not consider an argument not first decided by the district court.

Reversed and remanded to reinstate the complaint and for proceedings consistent with this opinion.